**Cornelius COOPER, Michael Edwards, Charcella Green, Patricia Harris, Sarah Jean Harris, Irene Mccullers, and Carolyn Wilson, Plaintiffs,**

v.

**SOUTHERN COMPANY, Georgia Power Company, Southern Company Services, Inc., and Southern Company Energy Solutions, Inc., Defendants.**

**Civil Action No. 1:00–CV–2231–ODE.**

United States District Court,
N.D. Georgia,
Atlanta Division.

March 31, 2003.

R. Lawrence Ashe, Jr., Nancy E. Rafuse, Susan Elisabeth Himmer, Paul Hastings Janofsky & Walker, Atlanta, GA, for Movant.

Michael B. Terry, Joshua F. Thorpe, Steven Rosenwasser, Bondurant Mixson & Elmore, Atlanta, GA, J. Keith Givens, Angela Joy Mason, Cochran Cherry Givens Smith & Sistrunk, Dothan, AL, Hezekiah Sistrunk, Jr., Cochran Cherry Givens Smith & Sistrunk, Atlanta, GA, Jock Michael Smith, phv, Cochran Cherry Givens & Smith, Tuskegee, AL, Johnnie L. Cochran, Jr., phv, Cochran Cherry Givens & Smith, Los Angeles, CA, Johnnie L. Cochran, Jr., phv, The Cochran Firm, Schnieder Kleinick Weitz, Damashek, et al, New York, NY, for Plaintiffs.

W. Ray Persons, King & Spalding, Richard Gerakitis, Stephen William Riddell, Charles A. Hawkins, Frederick Cobb Dawkins, Ashley Zeiler Hager, Sheldon W. Snipe, Troutman Sanders, Eric Jon Taylor, Walter Christopher Arbery, Kelly D. Ludwick, Hunton & Williams, Atlanta, GA, for Defendants.

## ORDER

ORINDA D. EVANS, District Judge.

This civil matter alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq., and 42 U.S.C. § 1981 is presently before the court on all Defendants' motion for summary judgment on the individual claims of Plaintiff Michael Edwards. For the reasons set forth below, Defendants' motion is GRANTED.

### I. Facts

■ The following facts are undisputed except as indicated otherwise. Plaintiff was hired by Defendant Georgia Power Company ["GPC"] in 1987.[1] Complaint

---

1. Defendants The Southern Company ["TSC"], Southern Company Energy Solutions, Inc. ["SCES"], and Southern Company Services ["SCS"] move for summary judgment on the grounds that Plaintiff has never been employed by nor did he ever apply for positions at TSC, SCES, or SCS. Plaintiff has failed to respond to SCES's motion and is deemed to have abandoned his claim against SCES. *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995); *Hudson v. Norfolk Southern Ry. Co.*, 209 F.Supp.2d 1301, 1329 (N.D.Ga.2001).

A plaintiff must be an "employee" to bring a Title VII lawsuit. *Llampallas v. Mini–Circuits, Inc.*, 163 F.3d 1236, 1242 (11th Cir. 1998). An "employee" for Title VII purposes is an "individual[ ] who receive[s] compensation from an employer." *Id.* at 1243. An "employer" is a "person engaged in an industry affecting commerce who has fifteen or more employees." 42 U.S.C. § 2000e(b). The analysis of whether a party is an employ-

er appears to be the same under Title VII and § 1981. *See Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir.1998) (noting that these statutes have the same requirements of proof and use the same analytical framework); *Richard v. Bell Atlantic Corp.*, 946 F.Supp. 54, 61 n. 2 (D.D.C.1996); *Sargent v. McGrath*, 685 F.Supp. 1087, 1089 (E.D.Wis.1988); *Alie v. NYNEX Corp.*, 158 F.R.D. 239, 245 n. 3 (E.D.N.Y.1994). Thus, Plaintiff has standing to sue TSC only if it can be shown that TSC constituted an "employer" from whom Plaintiff received compensation.

It is undisputed that TSC is a holding company which owns the stock of all other Defendants named in the complaint but has no employees. Womack Aff. ¶ 9. Plaintiff asserts that Defendants, including TSC, created SCS as a company-wide human resources department and use SCS's "extensive involvement in personnel policy-making and employee selection processes" to maintain "substantial involvement in GPC's personnel decisions."

¶ 86. He held positions in several different organizations within GPC, and was employed as a Lineman in early 1999 when he reported problems with a work-related back injury. Edwards Dep., Vol. III, at 47–51 & Exhibit 4. Effective on or about March 3, 1999, he was placed on permanent work restrictions by his physician. *Id.* These restrictions limited his lifting and bending functions, which ultimately precluded him from continuing in the Lineman position. *Id.* Thereafter, Plaintiff alternated between extended absences and light duty work assignments until November, 1999. *Id.* at 47–51, 61.

During the period from March through November, 1999, and thereafter, a representative from the Workers' Compensation Department at GPC made efforts to find alternate positions for Plaintiff and identified a number of opportunities for him. *Id.* at 63–64; White Dec. ¶¶ 5–13. One such opportunity was a temporary Cable Locator position, which Plaintiff accepted and occupied beginning on or about November 22, 1999. Edwards Dep., Vol. III, at 61–62. In that assignment, Plaintiff reported to James Weldon, Cable Locating Manager at GPC. Edwards Dep., Vol. I, at 28. Weldon apparently did not advertise the opening but accepted Plaintiff into the position based on White's recommendation. Weldon Dep. 54.

The duties of a Cable Locator generally include locating underground electrical cable at various locations within an assigned region to facilitate engineering, construction, and other types of projects and to avoid potential accidents or outages associated with such projects. Weldon Dec. ¶ 2; Edwards Dep., Vol. II, at 332–33; Ed-

wards Dep., Vol. III, at 158–60 & Exhibit 2. These duties require mapping skills, planning skills, teamwork, and the ability to work without direct supervision. Weldon Dec. ¶ 2; Edwards Dep., Vol. II, at 332–33; Edwards Dep., Vol. III, at 56–59 & Exhibit 2.

Plaintiff's temporary Cable Locator assignment ended on or about April 29, 2000. Edwards Dep., Vol. I, at 18; Edwards Dep., Vol. III, at 61–62. He has been receiving a combination of workers' compensation benefits and long term disability insurance benefits totaling approximately $2,170.00 per month since the end of his assignment in April, 2000. Edwards Dep., Vol. III, at 170–71.

Plaintiff applied for a regular (non-temporary) Cable Locator position in late March or early April, 2000. Complaint ¶ 88; Weldon Dec. ¶¶ 5–6. The record reveals the following concerning the selection process. The hiring manager for this position was James Weldon, who at the time was Plaintiff's supervisor in the temporary Cable Locator assignment. Weldon Dep. at 53; Weldon Dec. ¶ 5. Weldon testified that 35–40% of the individuals he has hired to fill the Cable Locator position are black. Weldon Dep. 18. Weldon prepared a listing of Cable Locator job duties. He, in conjunction with GPC's human resources department, prepared a job announcement which was posted on GPC's JobNet system. Numerous employees applied. Of those who applied, Weldon chose seven individuals for interviews. Plaintiff Edwards was one of those selected. Weldon had become Edwards' manager on November 22, 1999. However, Weldon did not have day-to-day contact with Plaintiff,

---

Plaintiff fails to point to any facts in the record to support these allegations; however, even if this were true, it is irrelevant with respect to Plaintiff's claims. Plaintiff has failed to provide evidence that any SCS employees were involved in any allegedly dis-

criminatory acts. *See Wood v. Southern Bell Telephone and Telegraph Co.,* 725 F.Supp. 1244, 1249–50 (N.D.Ga.1989). Accordingly, Defendants' motion for summary judgment is GRANTED with respect to TSC, SCES and SCS.

as the Cable Locator job is by its nature a field position; also, Plaintiff was working out of GPC's Gibbs Road location. Weldon had never given Plaintiff an evaluation.

As the hiring manager for the Cable Locator position, Weldon put together the committee which would interview the applicants. He selected Phyllis Austin, a Senior Region Support Representative (white female) who worked at the Gibbs Road location which was Plaintiff's home base. He also selected Tyre Hester, an Engineering Associate I (white male), and Terry Smith, a Cable Locator (black male).

Prior to the interview date, candidate profiles were prepared for each of those applicants who were to be interviewed. The candidate profile is a form which provides information such as hire date, current job, and other identifying data. It lists the full employment history of the applicant, as well as the in-company self-improvement courses taken by the applicant. Presumably, each of the interviewers was furnished with the candidate profile before the interview.

Human Resources Representative Danielle James observed the interviews. James Dec. ¶ 3. Before the interviews, Ms. James advised the selection committee about the mechanics of the selection process and instructed the committee members that the candidates' race and other impermissible factors were not to be considered during the selection process. *Id.* The committee ultimately selected one candidate, Carey Rutledge, for this position. Weldon Dec. ¶¶ 9, 12.

Each applicant was interviewed individually. The interview was based on questions contained in a structured interview questionnaire, which had been prepared by Defendants' human resources department. Each interviewer had a copy of the questionnaire. The first question was, "Please tell me about your background and experi-ence for this position." The final question was, "Why do you want this job?" The remaining six questions addressed various attributes deemed important to the job— initiative, customer focus, communication, and safety. All were open-ended questions. For example, one of the "initiative" questions was, "Sometimes daily emergencies keep us from getting our most important work done. What are some ways you have found to stay on track and meet scheduled deadlines?" The "customer focus" question was, "Describe what 'meeting the needs of the customer' means to you. Tell me about a time when you met the needs of a customer." The structured interview questionnaire contained spaces for each interviewer to score the applicant's response to questions 2 through 7, the low score for each answer being 0 and the top score being 3. Each of the interviewers made notes in spaces provided on the questionnaire, presumably while the applicant was talking, during the respective interviews. The forms pertaining to Plaintiff are in the record. *See* Weldon Dep. Exhs. 7–11. The record does not clarify exactly when the interviewers scored the responses—whether at the conclusion of each interview, or at a later time.

The Court notes that Plaintiff has not questioned the job-relatedness of the questions asked during the interview.

Following the interviews, the four committee members were asked to place the seven applicants in rank order from 1 to 7 (1 being the top ranked applicant) based on "gut feel" only. According to the interview scoring summary, this is an optional step in the process. Weldon, Hester and Smith ranked Plaintiff as a "1". Smith also gave a "1" ranking to applicant Jim Brown. Ms. Austin ranked Edwards as "4".

Applicant Jim Brown (white male) received rankings of 3, 1, 2 and 1, putting him in second place (if the number of "1" ratings is controlling) or tied for first place (if the aggregate rankings are deemed most relevant: Plaintiff $1+4+1+1=7$; Brown $3+1+2+1=7$). Cary Rutledge, a white male applicant, was in next place with rankings of 2, 2, 3 and 5.

The record does not clarify at what point the interviewers' scores of the answers to the structured questions were tallied. The tally was done by the facilitator, Danielle James, based on the scores reflected in the structured interview questionnaire. With 3 being the maximum points awardable for each answer, and with four individuals scoring each answer, the maximum points awardable for a particular answer to a question was 12. Tallies were done for all seven of the applicants who were interviewed. The scores ranged from 69 points for Jim Brown, to a low of 55 points. Edwards' point count was 61 and the point count for Carey Rutledge was 62.5.

The committee discussed the merits or demerits of each of the top 3 applicants—Brown, Plaintiff, and Rutledge. It is undisputed that at this point, Ms. Austin stated that she had often seen Plaintiff on the phone and visiting with other employees, whereas the other Cable Locators were in the office only briefly at the beginning and ending of the workday. *See* Austin Dec. ¶ 6. Plaintiff's knowledge of the job and ability to do the job was not questioned. Weldon stated that prior to the committee interviews he had the feeling that Plaintiff probably would be the top applicant for the position. Weldon Dep. 33, 98.

Committee member Smith opined that Plaintiff was the top-qualified applicant because he had held the same position in a temporary capacity; thus, his knowledge of the job was superior. At some point, the committee's facilitator Danielle James made negative comments about Plaintiff's behavior during the interview. Smith objected, apparently appropriately, that Ms. James' expression of views was not appropriate.

The committee then discussed the fact that during his interview candidate Brown had said that the trip to Atlanta for the interview had taken longer than he had expected, and that plus his back injury made him think he might not take the job if it was offered to him. The committee therefore determined—apparently by mutual consensus—that the job would not be offered to Brown based on his expression of disinterest but rather should be offered to Rutledge, who the committee by consensus deemed to be the top applicant.

Weldon accepted the committee's recommendation. As the hiring manager for the position he had the discretion to reject the committee's recommendation, but he testified that his customary practice was to accept it. He could not recall an instance when he had not accepted a committee recommendation. Weldon Dep. 41.

Plaintiff does not provide evidence countering the claim of low productivity or frequent absences which according to Defendant constituted 20% of Edwards' work days while he was being supervised by Weldon. He does point out, with no dispute by Defendants, that all absences were excused on account of doctors' appointments or vacation time. Edwards also offers the declaration of Tensley Usher, a Cable Locator, who opines that Cable Locators have frequent need to use the telephone, that he worked with Plaintiff during the time in question and that in his opinion, Plaintiff was a productive employee.

Plaintiff applied for a number of other job postings through Defendants' internal job posting and application system, Job-Net. Edwards Dep., Vol. II, at 319–20;

Edwards Dep., Vol. III, at 80–81, 109–10. In one of his depositions, Plaintiff testified that there are twelve job types, in addition to the Cable Locator position discussed above, that he contends are at issue in this case. Edwards Dep., Vol. III, at 91–92 & Exhibit 1. These job types are as follows: Power Delivery Specialist; Construction Safety Coordinator; Distribution Supervisor; Operator I; Drafter; Operating Associate I; Operation Services Representative; Service Coordinator; Shift Team Leader; Support Representative; Customer Service Representative; and Lighting Coordinator. *Id.* In his response to Defendants' motion for summary judgment, Plaintiff asserted that he was also denied a Power Delivery Supervisor position because of his race.

On July 21, 2000, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ["EEOC"] alleging that he had been subjected to discrimination based on his race. Edwards Dep., Vol. I, at 192; Edwards Dep., Vol. II, at 217–19. Plaintiff then requested and received a Dismissal and Notice of Rights on July 27, 2000, the same day the instant lawsuit was filed. Edwards Dep., Vol. II, at 217.

## II. *Defendants' Summary Judgment Motion*

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the [Defendant] is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail in its motion for summary judgment, Defendants must show that the evidence is insufficient to establish an essential element of Plaintiff's

case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling on Defendants' motion, the court must view the evidence in a light most favorable to Plaintiff. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). If Defendants make a sufficient showing, then Plaintiff "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)).

Under Title VII, an employer may be found liable for unlawful discrimination under any one of three discrete theories: disparate treatment discrimination, pattern and practice discrimination, or disparate impact discrimination. *EEOC v. Joe's Stone Crab,* 220 F.3d 1263, 1273 (11th Cir.2000).[2] The first two theories require proof of discriminatory intent, while the third does not. *Id.* at 1273. Defendants argue that summary judgment is appropriate here because Plaintiff has failed to establish a claim of intentional discrimination or disparate impact. Plaintiff objects, arguing that there are genuine issues of material fact precluding summary judgment as to both Plaintiff's intentional discrimination and disparate impact claims. Because the theories place different burdens on the parties, the Court will address them separately.

### A. *Intentional Discrimination*

To establish a prima facie case of race discrimination under a disparate treatment theory, Plaintiff may offer either direct or circumstantial evidence of discriminatory intent. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–

---

**2.** Section 1981 provides a cause of action only for claims of intentional discrimination. *See Washington v. Davis,* 426 U.S. 229, 239,

96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); *Ferrill v. Parker Group, Inc.,* 168 F.3d 468, 472 (11th Cir.1999).

03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Alexander v. Fulton County, Ga.*, 207 F.3d 1303 (11th Cir.2000). If the plaintiff presents direct evidence of discrimination, the defendant is then required to prove by a preponderance of the evidence that it would have taken the adverse employment action even in the absence of discrimination.

▮▮▮▮ To make a prima facie case using circumstantial evidence, a plaintiff may use the test established in *McDonnell Douglas*.[3] A plaintiff may establish a prima facie case by demonstrating 1) that he belongs to a protected class under Title VII; 2) that he was qualified for and applied for the job; 3) that he was rejected; and 4) that others who were not members of the protected class were promoted. *Denney v. City of Albany*, 247 F.3d 1172, 1183 (11th Cir.2001); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997).

▮▮▮ If the plaintiff provides sufficient circumstantial evidence to support a prima facie case, a legal presumption of unlawful discrimination arises and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged employment action. *McDonnell Douglas*, 411 U.S. at 802–03, 93 S.Ct. 1817. The defendant's burden is "exceedingly light" and is "one of production, not proof." *Id.* at 802, 93 S.Ct. 1817. If the defendant satisfies its burden, the presumption of discrimination is eliminated and the plaintiff must be given an opportunity to prove by a preponderance of the evidence that the legitimate reason offered by the defendant is a pretext for discrimination. *Id.*

▮▮▮ A plaintiff may also use statistical evidence to establish a prima facie case of discrimination or pretext. *Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946, 952 (11th Cir.1991). Statistics may be used to establish an individual plaintiff's claim that a pattern or practice of discrimination existed, or simply to bolster the plaintiff's circumstantial evidence of individual disparate treatment. Under the pattern and practice theory, the plaintiff must provide evidence sufficient to establish that impermissible discrimination was the employer's "standard operating procedure." *Joe's Stone Crab*, 220 F.3d at 1274–75, 1286–87 (internal quotation marks and citation omitted). Even if the statistical evidence is insufficient to meet this standard, evidence establishing a discriminatory pattern "is probative of motive and can therefore create an inference of discriminatory intent with respect to the individual employment decision at issue." *Parker v. Burnley*, 693 F.Supp. 1138, 1153 (N.D.Ga.1988) (internal quotation marks and citation omitted). Whether the plaintiff argues that the statistical evidence supports a pattern or practice claim or simply constitutes evidence of disparate treatment, "[t]he ultimate inquiry remains whether the plaintiff has demonstrated that the defendant *intentionally* discriminated in refusing to enter into a contractual relationship." *Brown*, 939 F.2d at 952 (citing *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir.1987)).

### 1. Disparate Treatment

In their motion, Defendants apparently do not argue that Plaintiff has failed to establish a prima facie case. Instead, Defendants assert that they have offered legitimate non-discriminatory reasons to rebut any presumption of discrimination in the decisions not to hire or promote Plain-

---

**3.** The *McDonnell Douglas* standard for a prima facie case also is applicable in employment discrimination suits brought under 42 U.S.C. § 1981. *Sledge v. Goodyear Dunlop Tires North America, Ltd.*, 275 F.3d 1014 (11th Cir.2001).

tiff. Defendants argue that summary judgment is appropriate because Plaintiff has failed to provide sufficient evidence to establish that these reasons are pretextual. In response, Plaintiff points to facts in the record which he contends raise genuine issues of material fact precluding summary judgment.[4] It is therefore necessary to determine whether Plaintiff has provided sufficient evidence to raise a genuine issue of material fact with respect to pretext for any of the positions.

*Cable Locator*

*Job Requisition Number 010279*

 Defendants assert two reasons for their decision not to hire Plaintiff for this position: that Plaintiff did not perform as well in the interview as the successful candidate and that Plaintiff's performance in the temporary Cable Locator position was subpar. Plaintiff argues that he can establish pretext by showing that he was more qualified than the successful candidate and that Defendants' proffered reasons for the hiring decision are false.

 While hiring a less qualified person is probative of discriminatory motivation, "a plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the [person] who received the position he coveted. A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race." *Alexander,* 207 F.3d at 1339–40. Thus Plaintiff "must adduce evidence that the disparity in qualifications is so apparent as virtually to jump off the page and slap you in the face." *Cofield v. Goldkist,* 267 F.3d 1264, 1268 (11th Cir.2001) (internal quotation and citations omitted).

While Plaintiff provided evidence from which a reasonable jury could find that he had more technical skills and experience than the successful candidate, the alleged disparity in qualifications is insufficient to establish by itself that the decision to hire the successful candidate was motivated by race.

Nor is Plaintiff's other evidence sufficient to raise a genuine issue as to pretext. Plaintiff claims that he can show that Defendants' asserted legitimate non-discriminatory reasons for the decision not to hire Plaintiff are false. Defendants' first reason is that the successful candidate performed better than Plaintiff in the interview. Weldon testified that "while the panel recognized that [Plaintiff] had experience, some members of the panel observed that [Plaintiff] displayed an overly casual approach to the interview process. He seemed to believe he should automatically get the job just because he was temporarily performing a Cable Locator assignment." Weldon Dec. ¶ 11. Austin testified that she and other members of the panel "believed [Plaintiff] displayed presumptuous behavior during the interview. He acted as though he was interviewing the panel as to why he should take the job rather than showing the panel that he should be selected for the position.... His overall demeanor struck me as inappropriate for the situation." Austin Dec. ¶ 8.

Plaintiff argues that the following facts, which are undisputed, create a genuine issue as to pretext precluding summary judgment: that the only black member of the selection panel disagreed with negative comments made about Plaintiff's interview

---

**4.** Plaintiff alleges that he was discriminated against with respect to multiple openings in fourteen positions. Plaintiff now argues that Defendants' asserted legitimate, non-discriminatory reasons should not be considered be- cause Defendants included them in an appendix to their motion rather than within the text of the motion itself. The Court rejects this argument.

performance (Smith Dec. ¶ 5); that three out of the four panel members rated Plaintiff as the top candidate immediately after the interviews were completed (Weldon Dep. 98–99); and that a panel member's interview notes indicated that Plaintiff performed well during the interview and that Plaintiff's performance was very close to that of the person hired (*Id.* at 99, 103).

While this evidence is arguably sufficient to establish that the panel disagreed about Plaintiff's interview performance, Plaintiff has failed to establish pretext with respect to Defendants' second asserted reason for the decision not to hire Plaintiff: that Plaintiff's performance in the temporary cable locating position was subpar. Plaintiff's supervisor testified that "[t]he amount of work [Plaintiff] completed in the temporary Cable Locator position was low as compared to other Cable Locators." Weldon Dec. ¶ 4. According to Defendants, one of the panel members reported during the selection process that she had often seen Plaintiff on the phone and visiting with other employees while other Cable Locators were in the office only briefly at the beginning and ending of the work day.

Although other Cable Locators typically were in the office only briefly a couple of times during the day to pick up their work assignments, [Plaintiff] seemed to be in the office much more frequently and for longer periods of time than other Cable Locators. I observed [Plaintiff] spending work time talking on the telephone and visiting with other employees.

[Plaintiff] was also absent from work on a regular basis, sometimes without advanced notice. These frequent absences made it even more important to use his time at work productively. My impression was that [Plaintiff] did not seem to be trying very hard to succeed at the Cable Locator job. He did not seem motivated to get the work done

efficiently even though there were many work orders for Cable Locators. My impression was confirmed when I heard complaints from other Cable Locators that [Plaintiff] was not getting his work done, and that they had to pick up part of his workload.

I shared this information with the interview panel during our discussion of [Plaintiff's] suitability for the Cable Locator position. While [Plaintiff] had experience as a Cable Locator, I believed it was important for the Committee to know about [Plaintiff's] poor work habits. I felt this information was relevant to the decision.

Austin Dec. ¶¶ 5–7; *see also* Weldon Dec. ¶ 10.

Plaintiff argues that the following evidence creates genuine issues of material fact as to whether these reasons are a pretext for discrimination. First, Plaintiff points to evidence that Plaintiff's supervisor considered him one of the best qualified for the position at issue before the interview and had a "gut instinct" that Plaintiff was the top applicant for the position. Weldon Dep. at 33, 98. Plaintiff challenges Defendants' assertion of low productivity with the testimony of another Cable Locator that the position requires extensive telephone use and that Plaintiff generally performed his job well and did not overuse the telephone. Usher Dec. ¶¶ 7–10.

■ The proper pretext analysis is whether the plaintiff has demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1538 (11th Cir.1997) (internal quotation mark and citations omitted). Defendants are certainly entitled to em-

ploy subjective criteria such as an interviewer's response to an applicant or co-workers' observations about an applicant's work habits their in hiring process. *Murphy v. Yellow Freight System, Inc.*, 832 F.Supp. 1543, 1548 (N.D.Ga.1993) ("The use of subjective factors in making employment decisions cannot be sufficient to support a finding of discrimination."). Plaintiff contends that the subjective reasons asserted are not credible based on evidence in the record. However, Plaintiff has not come forward with any evidence to establish that the decisionmakers with respect to this position did not find that Plaintiff's absences and low productivity made him a less attractive candidate. Plaintiff's evidence is thus insufficient to permit a reasonable factfinder to conclude that the reasons given by Defendants were a pretext for intentional discrimination.

█ Plaintiff has also provided statistical evidence of racial imbalances in Defendants' hiring and promotion practices as evidence of pretext. Specifically, Plaintiff has offered statistical reports to support his claim that Defendants' hiring and promotion practices had a discriminatory effect on black employees. Plaintiff argues that the reports of his expert, Dr. Madden, which find statistically significant disparities in the promotion of black employees relative to white employees, are evidence from which a reasonable factfinder could determine that intentional discrimination occurred. Defendants contend that Plaintiff's generalized statistics are insufficient to support Plaintiff's claims of intentional discrimination.

█ As the Supreme Court has noted, while statistical evidence may allow the District Court to "determine ... that the (racial) composition of defendant's labor force is itself reflective of restrictive or exclusionary practices ... such general determinations, while helpful, may not be in and of themselves controlling as to an indi-vidualized hiring decision, particularly in the presence of an otherwise justifiable reason for refusing to hire." *McDonnell Douglas,* 411 U.S. at 805 n. 19, 93 S.Ct. 1817 (internal quotation marks and citation omitted). In this case, Plaintiff's statistical evidence is insufficiently tailored to support his individual claims.

Plaintiff's statistics compare the promotion rate of employees within the same pay grade who perform similar job functions; however, these statistics generally fail to compare similarly situated individuals, significantly diminishing the probative value of any disparity. For example, Plaintiff's statistics do not account for differences in the type or level of the employees' applied skills, both of which are highly related to hiring decisions. Plaintiff does not provide statistics comparing employees with equivalent work experience in specific job categories or job progressions, or outcomes for those employees, both black and white, who had actually applied for posted positions challenged by Plaintiff. Plaintiff relies instead on a statistical analysis of a company-wide data pool and makes no attempt to narrow the data pool to the locations in which he worked or the positions which he challenges. As this Court noted in the order denying class certification, the probative value of Plaintiff's statistical evidence is therefore highly questionable, in significant part due to the treatment of factors such as experience, education, and specific promotion processes. *Cooper v. Southern Company,* 205 F.R.D. 596, 613–14 (N.D.Ga.2001).

The analytical deficiencies of Plaintiff's statistics diminish the probative value of this evidence such that it cannot by itself support a claim of disparate treatment. *See Brown v. American Honda Motor Co.,* 939 F.2d 946, 952 (11th Cir.1991) (holding that summary judgment was appropriate where plaintiff's statistical evidence, which

lacked specific analytical foundation and thus failed to show that employer maintained discriminatory intent, was insufficient to establish prima facie case or pretext); *Hawkins v. Ceco Corp.*, 883 F.2d 977, 985 (11th Cir.1989) (holding that plaintiff's statistical evidence failed to establish prima facie case or pretext where evidence failed to make specific analytical comparisons); *cf. James v. Stockham Valves & Fittings Co.*, 559 F.2d 310, 330 (5th Cir.1977) (holding that plaintiff's evidence of statistical disparities in hiring, promotion and compensation was sufficient to support claim of intentional discrimination where the employment decisions were based on *completely* subjective criteria).[5]

Because Plaintiff has failed to establish pretext with respect to all of Defendants' asserted reasons, Defendants are entitled to summary judgment with respect to this claim. *See Chapman v. A.I. Transport*, 229 F.3d 1012 (11th Cir.2000); *Combs*, 106 F.3d at 1529.

*Job Requisition Number 008603*

Defendants assert that Plaintiff was not awarded a position at this opening because the opening was rescinded before being filled. Defendants cite to the declaration of Jim Weldon to support this position. While Weldon's declaration does not provide any evidence with respect to this opening, Weldon's deposition testimony confirms that the position was in fact rescinded. Weldon Dep. 71–72. Further, Plaintiff has failed to respond specifically to Defendants' motion for summary judgment with respect to this opening. Defendants are therefore entitled to summary

judgment on this claim. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995); *Hudson v. Norfolk Southern Ry. Co.*, 209 F.Supp.2d 1301, 1329 (N.D.Ga.2001). Accordingly, Defendants' motion for summary judgment is GRANTED with respect to Plaintiff's promotion claim.

Plaintiff's failure to specifically plead facts with respect to the remaining positions precludes Plaintiff's pursuit of claims related to such positions. *See Coon v. Georgia Pacific Corp.*, 829 F.2d 1563, 1569 (11th Cir.1987) (holding that district court did not err when it refused to allow plaintiff to proceed on individual discrimination claims not pleaded in her complaint). However, because Plaintiff did specify the following positions during discovery, the Court will review Plaintiff's claims out of an abundance of caution.

*Operator I* (Job Requisition Number 010284)[6]

Defendants offer two legitimate, non-discriminatory reasons for the decision not to interview and thus not to hire Plaintiff for this position: that Plaintiff received a negative reference from his supervisor and that the successful candidates were believed to be the most qualified applicants for the position. Defendants' Motion for Summary Judgment, Exhibit A at 11; Johnson Dec. ¶ 5; Lawrence Dec. ¶ 5. Specifically, Defendants provided evidence that Plaintiff was not selected for an interview because Plaintiff's supervisor indicated to the hiring manager for this position that Plaintiff had recurring attendance problems. Lawrence Dec. ¶ 5. Defendants

---

5. This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

6. Plaintiff applied for several Operator I positions during the period in question. Defendants provided legitimate, non-discriminatory

reasons for each of these positions. *See* Defendants' Motion for Summary Judgment, Exhibit A. Because Plaintiff provides arguments as to pretext for only one of these openings, the Court will consider only this opening in its analysis. Defendants' Motion for Summary Judgment is GRANTED as to the remaining Operator I positions.

also described the specific qualifications and experience the selection committee relied upon in determining that the successful candidates were best-qualified for the position. Johnson Dec. ¶ 5.

To establish pretext, Plaintiff does not address the evidence that he received a negative reference but instead contends that the successful candidates were not qualified for the position. In support of his attempt to create a genuine issue of material fact as to whether these candidates were qualified, Plaintiff relies upon job posting documents and performance evaluations of the successful candidates.[7] These performance evaluations indicate that the successful candidates received less than stellar reviews in some of the areas listed as job requirements in the relevant job posting.[8] However, that Defendants suggested improvement in the areas at issue—safety skills and ability to participate in a team environment—does not establish that Defendants did not believe that the successful candidates were qualified for the position. Plaintiff makes no attempt to indicate what Defendants considered the requisite level of skill in the areas at issue and thus cannot establish that the successful candidates did not meet Defendants' requirements.

Because Plaintiff has failed to come forward with evidence from which a reasonable jury could determine that Defendants' reasons are pretext for discrimination, Defendants' motion for summary judgment is GRANTED with respect to this position.

*Operator II* (Job Requisition Number 008845)[9]

Defendants offer the following reason for the decision not to hire Plaintiff for this position: that the successful candidates were believed to be more qualified than Plaintiff and other applicants for the position. Defendants' evidence shows that the hiring manager narrowed the list of applicants by examining their resumes and job history profiles using the specific criteria set out for this position and by conducting informal surveys of people who knew or had worked with individual applicants. The hiring manager considered the following job-related factors in determining which applicants to interview: previous positions held, training completed, educational achievements, and previous job perfor-

---

7. Defendants have filed a motion to strike this evidence, arguing that it is inadmissible because it is unauthenticated and constitutes inadmissible hearsay. However, this argument is unavailing because there is no requirement that evidence be presented in admissible form as long as the evidence would be admissible at trial. *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir.1996). The evidence at issue would likely be admissible at trial. *See, e.g.,* 31 Charles Alan Wright & Victor James Gold, Federal Practice & Procedure § 7105 (2000)("Authentication can also be accomplished through judicial admissions such as ... production of items in response to ... [a] discovery request."); F.R.E. 803(6) (hearsay exception for business record); F.R.E. 801(d)(2)(D) (admission by party opponent does not constitute hearsay); F.R.E. 806 (hearsay exception for purposes of impeachment).

8. Plaintiff does not address any of the other factors Defendants considered in the selection process, other than contending that he was more experienced than the successful candidates. Plaintiff's own evaluation of whether his experience made him more qualified than the successful candidates is insufficient to establish pretext precluding summary judgment. *Standard v. A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1332–33 (11th Cir.1998).

9. Plaintiff applied for several Operator II positions during the period in question. Defendants provided legitimate, non-discriminatory reasons for each of these positions. *See* Defendants' Motion for Summary Judgment, Exhibit A. Because Plaintiff provides arguments as to pretext for only one of these openings, the Court will consider only this opening in its analysis. Defendants' Motion for Summary Judgment is GRANTED as to the remaining Operator II positions.

mance. Plaintiff was not selected for an interview. Defendants contend that the hiring committee made a consensus recommendation to hire the successful candidates based on their relevant experience, demonstrated understanding of position requirements, and demonstrated ability to handle the demands of the job.

Plaintiff now asserts that he can show pretext by demonstrating that one of the successful candidates was not qualified for the position. Plaintiff argues that this candidate did not have the knowledge of power systems operations and basic electrical theory stated as a qualification in the job posting, relying on a post-hiring development plan for this candidate suggesting that the candidate attend a seminar on basic electricity.[10] Again, however, Plaintiff fails to provide any evidence with respect to how much weight Defendants placed on this job skill. That Defendants suggested additional training for the successful candidate does not establish that Defendants did not believe that the successful candidate was qualified for this position.

Plaintiff has therefore failed to provide evidence establishing a genuine issue of material fact as to pretext. Accordingly, Defendants' motion for summary judgment with respect to this position is GRANTED.

*Power Delivery Specialist* (Job Requisition Number 007486)

Plaintiff first identified this position as one in which he was discriminated against in his response to Defendants' motion for summary judgment. Because Plaintiff asserts that he has both direct and circumstantial evidence of discrimination with respect to this position, the Court will first address whether Plaintiff has presented evidence sufficient to state a prima facie case.

In this case, Plaintiff asserts as direct evidence of discrimination that the alleged decisionmakers for this position permitted nooses to be hung in their facilities for years, including when this opening was being filled, and that these decisionmakers shredded evidence related to the hiring process for this position. To support these claims, Plaintiff offers the deposition testimony of Defendants' employees that they had seen the nooses but had not taken action to have them removed and that they had shredded documents in the course of preparing documents for production in this case.

This testimony does not constitute direct evidence of discrimination. To make a prima facie case using direct evidence, Plaintiff must come forward with evidence that, if believed, proves the existence of discrimination without inference or presumption. *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir.1999). "[D]irect evidence is composed of only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of some impermissible factor." *Id.* (internal quotations and citation omitted). However, if the alleged conduct "at best merely suggests a discriminatory motive, then it is by definition only circumstantial evidence." *Id.* That these witnesses saw the nooses but did nothing about them does not constitute direct evidence of discrimination because it does not clearly establish the decisionmakers' intent to discriminate. Rather, this evidence requires an inference that because these men did not take action

---

**10.** Plaintiff also appears to argue that he was more qualified than this candidate, asserting that his Lineman position required more knowledge and exposure to electrical systems than the successful candidate's Mechanic position. However, Plaintiff fails to point to any evidence in the record to support this argument. Plaintiff's own evaluation of whether his experience made him more qualified than the successful candidate is insufficient to establish pretext precluding summary judgment.

to remove the nooses, they maintained a racial animus and another inference that such animus affected the decision not to hire Plaintiff. Nor does Plaintiff's evidence of document shredding constitute direct evidence of discrimination. Instead, it requires an inference that these workers shredded the documents to conceal that the decision not to hire Plaintiff was based on his race.

However, Plaintiff may be able to state a prima facie case of discrimination through the use of circumstantial evidence. Plaintiff can clearly establish that he belongs to a protected class, that he applied for the job, that he was rejected and that others who were not members of the protected class were promoted. *See Denney,* 247 F.3d at 1183. There is some question as to whether Plaintiff was qualified for the position. While Plaintiff contends that he meets some of the articulated qualifications for the position, Defendants produced undisputed evidence that Plaintiff's application lacked the repair shop and mechanical experience required for the position, suggesting that Plaintiff was not qualified for the position.

In any case, Defendants have come forward with a legitimate, non-discriminatory reason—that the successful candidate was the most qualified applicant for the position—sufficient to overcome any presumption of discrimination.[11] Defendants contend that the hiring manager considered the following factors in determining which applicants to interview: whether the candidate had multiple years of experience as a journeyman, whether the candidate was familiar with the major functions of the repair shop, and whether the candidate was technically proficient in his own job.

The hiring manager indicated that the position required extensive repair shop and mechanical experience because it was a supervisory position. Defendants assert that Plaintiff was not selected for an interview because his application reflected neither familiarity with the repair shop nor a mechanical background and because his Lineman position did not involve repair shop or mechanical experience.

Plaintiff contends that he can establish pretext by showing that the successful candidate was less qualified than he was. However, Plaintiff does not provide any specific evidence with respect to either his or the successful candidate's qualifications for this position. Plaintiff's own evaluation of his qualifications does not support a finding of pretext. *Standard v. A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1332–33 (11th Cir.1998).

Nor can Plaintiff establish pretext with his evidence that some of the alleged decisionmakers were aware of the nooses but did not take action to remove them. Statements or conduct showing a supervisor's racial animus toward the plaintiff may be significant evidence of pretext, once the plaintiff has set out a prima facie case. *Jones v. Bessemer Carraway Medical Center,* 137 F.3d 1306, 1313 (11th Cir. 1998) (citing *Smith v. Horner,* 839 F.2d 1530, 1536–37 (11th Cir.1988)), *mod'd in part on other grounds,* 151 F.3d 1321. Plaintiff's allegations suggest that these employees tolerated discriminatory conduct; however, such evidence is insufficient to establish pretext. To establish pretext, Plaintiff must show not only that racial animus existed but that such animus tainted the ultimate decisionmaker's ac-

---

11. Plaintiff argues that the Court should not consider Defendants' asserted non-discriminatory reason because it was asserted for the first time in Defendants' reply brief. The Court rejects this argument in light of the fact that Plaintiff asserted facts with respect to this position for this first time in Plaintiff's Response to Defendants' Motion for Summary Judgment.

tion. *See, e.g., Llampallas v. Mini–Circuits, Lab, Inc.,* 163 F.3d 1236, 1248 (11th Cir.1998). Plaintiff must therefore prove that such discriminatory animus was an actual cause of the decision not to hire Plaintiff. *Stimpson v. City of Tuscaloosa,* 186 F.3d 1328, 1331 (11th Cir.1999). Plaintiff has failed to point to any evidence that either Sanders or Davis was involved in the decision not to hire Plaintiff for the position at issue or that Cawthorne, the hiring manager who made the decision not to interview Plaintiff, had knowledge of the nooses.

Plaintiff has presented evidence that Bagwell, his direct supervisor at one point, was aware of the nooses. Bagwell was responsible for Plaintiff's performance evaluations, which were considered by Cawthorne in the employment decision. However, Bagwell's evaluation was overwhelmingly positive. Further, Plaintiff does not argue, nor does the evidence suggest, that Cawthorne relied solely on Bagwell's evaluation in making the decision not to interview Plaintiff. Thus, Plaintiff cannot use this evidence to establish pretext. *Cf. Llampallas,* 163 F.3d at 1248 (holding that Plaintiff may establish pretext by showing that decisionmaker merely rubberstamped discriminatory recommendation without conducting his own investigation of the facts surrounding Plaintiff's employment); *Pennington v. City of Huntsville,* 261 F.3d 1262, 1270 (11th Cir. 2001) (holding that where decisionmaker conducts his own investigation and makes an independent decision, his decision is free of the taint of a biased subordinate employee); *Jones v. Bessemer Carraway Medical,* 151 F.3d 1321 (11th Cir.1998) (holding that supervisor's racially motivat-

ed statements were insufficient to support prima facie case where decisionmaker did not rely solely on supervisor's reports of plaintiff's misconduct but made independent investigation).

Similarly, Plaintiff's evidence of document shredding does not support a finding of pretext. "In this circuit, an adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith." *Bashir v. Amtrak,* 119 F.3d 929, 931 (11th Cir.1997). The Court has already determined that there was no evidence of bad faith. *Cooper v. Southern Co.,* No. 00–2231 (N.D.Ga. Feb. 5, 2001).

Because Plaintiff has failed to provide evidence sufficient to support a finding of pretext, Defendants' motion for summary judgment is GRANTED with respect to this position.

*Operating Services Representative* (Job Requisition Numbers 008344 and 008352) [12]

Defendants assert the following reason for the decision not to hire Plaintiff for these openings: that the successful candidates were believed to be more qualified than Plaintiff and other applicants. Defendants provide evidence to establish that the selection process was fair and that race was not considered in the employment decision and thus met the burden of producing a legitimate, non-discriminatory reason sufficient to overcome the presumption of discrimination. Plaintiff's assertions that he was qualified for the position and that the successful candidate lacked computer skills may be construed as an attempt to establish that Defendants' asserted reason for the decision was pretextual. However,

**12.** Plaintiff applied for multiple Operating Services Representative positions during the period in question. Defendants provided legitimate, non-discriminatory reasons for each of these positions. *See* Defendants' Motion for Summary Judgment, Exhibit A. Because Plaintiff provides pretext arguments for the June, 1999, openings only, the Court will consider only these openings in its analysis. Defendants' Motion for Summary Judgment is GRANTED as to the remaining Operating Services Representative position.

Plaintiff has failed to point to any evidence establishing that computer skills were required for this position. Thus, Plaintiff's evidence that a development plan for the successful candidate suggested computer training is not sufficient to support a finding that Defendants did not believe that this candidate was qualified for the position. Therefore, Defendants' motion for summary judgment is GRANTED with respect to this position.

*Shift Team Leader*

In their motion for summary judgment, Defendants state that the Shift Team Leader position is one in which Plaintiff alleges he was discriminated against. While Defendants have moved for summary judgment with respect to all of Plaintiff's claims, Defendants have not asserted a non-discriminatory reason for any employment decision involving Plaintiff nor have they pointed to any evidence with respect to this position. However, Plaintiff does not address this deficiency is his response to Defendants' motion, suggesting that this position is no longer at issue. Plaintiff is therefore deemed to have abandoned his claim with respect to this position and Defendants are entitled to summary judgment.

*Remaining Positions*

Upon review of the record, the Court finds that Defendants have asserted legitimate, non-discriminatory reasons for the decisions not to hire Plaintiff for any of the remaining positions in which Plaintiff asserts Defendants discriminated against him.[13] Plaintiff has made no attempt to point to any specific evidence suggesting pretext as to any of these decisions. In his attempt to avoid summary judgment on these claims, Plaintiff instead argues that he can prove disparate treatment with statistical evidence of discrimination. Howev-

er, as discussed above, the statistical evidence provided by Plaintiff is insufficient in the absence of any other evidence to support a finding of pretext with respect to any of Plaintiff's claims. Accordingly, Defendants' motion for summary judgment is GRANTED with respect to these claims.

2. *Pattern and Practice*

 Plaintiff has failed to create a genuine issue of material fact as to whether a pattern or practice of discrimination existed. As discussed above, Plaintiff has provided statistical evidence in an attempt to establish a claim of pattern and practice discrimination. While "statistics as to [Defendants'] employment policy and practice may be helpful to a determination of whether [Defendants'] refusal to [ ]hire [Plaintiff] in this case conformed to a general pattern of discrimination against blacks," *McDonnell Douglas,* 411 U.S. at 805, 93 S.Ct. 1817, to have probative value, statistical evidence must be tailored to the appropriate types of decisions and specific populations involved. *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 651–55, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989); *In re: Employment Discrimination Litig. Against the State of Ala.,* 198 F.3d 1305, 1312 (11th Cir.1999). The analytical deficiencies of Plaintiff's statistical evidence, discussed above, render this evidence insufficient to support a pattern or practice claim.

In addition to Plaintiff's expert reports, Plaintiff offers Defendants' internal personnel documents to support his argument that Defendants maintained a pattern or practice of compensation discrimination. While these documents indicate some disparity in compensation between black and white employees, these documents are not

---

**13.** Construction Safety Coordinator; Distribution Supervisor; Drafter; Service Coordinator; Shift Team Leader; Support Representative; Customer Service Representative; and Lighting Coordinator.

probative as to whether Defendants intentionally discriminated against Plaintiff during the period in question. The documents indicate average salaries of employees divided by racial classification but do not control for factors such as education, experience or skill level and thus cannot prove that Defendants discriminated on the basis of race. Plaintiff has thus failed to come forward with evidence sufficient to prove that intentional discrimination was Defendants' "standard operating procedure." *Joe's Stone Crab,* 220 F.3d at 1274–75. Accordingly, the Defendants' motion for summary judgment with respect to Plaintiff's pattern or practice claim is GRANTED.

### B. *Disparate Impact*

■ Finally, Defendants argue that Plaintiff has failed to establish a claim of disparate impact under Title VII. To establish a claim under a theory of disparate impact, Plaintiff must show 1) the existence of a statistically significant disparity among members of different groups affected by employment decisions; 2) the existence of a specific, facially neutral employment practice; and 3) the existence of a causal nexus between the specific, facially neutral employment practice and the statistically significant disparity. 42 U.S.C. § 2000e-2(k); *Joe's Stone Crab,* 220 F.3d at 1274; *In re: Alabama,* 198 F.3d at 1311–14. Defendants contend that Plaintiff's statistics, which are not adjusted to account for differences among various positions and the respective skill and education levels required, are insufficient to establish a statistically significant disparity required to state a claim. Plaintiff argues in response that his statistical evidence is sufficient to create a genuine issue of material fact precluding summary judgment.

■ As evidence of a facially neutral policy, Plaintiff points to Defendants' use of subjective criteria in determining which applicants to interview and thus which applicants to hire. While Plaintiff has failed to identify in his response to Defendants' motion for summary judgment a specific policy which has had an impermissibly discriminatory impact on him, Plaintiff provided evidence in his motion for class certification to support his claim that Defendants allowed the use of subjective criteria by decisionmakers in each of its subsidiaries.

However, showing that Plaintiff was subject to subjective policies does establish a prima facie case of disparate impact. Plaintiff must also show the existence of a causal nexus between these specific, facially neutral employment practices and a statistically significant disparity. " '[P]laintiff must offer statistical evidence of a kind and degree sufficient to show that *the practice in question* has *caused* the exclusion of applicants for jobs or promotions because of their membership in a protected group.' " *Joe's Stone Crab,* 220 F.3d at 1275 (quoting *Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 994–95, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988)). In this case, Plaintiff has failed to establish that the use of subjective hiring criteria caused a statistically disparity within the promotions for which he applied.

To establish the first element of a disparate impact claim, Plaintiff relies on his expert's report which finds statistically significant disparities in the promotion of black employees relative to white employees. As Defendants note, however, to have probative value, statistical evidence must be tailored to the appropriate types of decisions and specific populations involved. *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 651–55, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989); *In re: Alabama,* 198 F.3d at 1312. Plaintiff's expert reports an over-all statistical disparity between black and white employees in hiring and promotion by Defendants. However,

Plaintiff's statistics—which compare promotions among employees within the same pay grade who perform similar job functions—fail to distinguish between positions in which Defendants' decisionmakers applied the express objective hiring factors and those in which the decisionmakers employed subjective criteria. Further, Plaintiff's evidence generally fails to compare similarly situated individuals, significantly diminishing the probative value of any disparity. For example, Plaintiff's statistics do not account for differences in the type or level of the employees' applied skills, both of which are highly related to promotions. Plaintiff's evidence also fails to compare outcomes for those employees who actually applied for posted positions. Nor does Plaintiff's evidence distinguish between competitive and non-competitive promotions; such deficiency further undermines the probative value of Plaintiff's statistics with respect to promotions. *See Forehand v. Florida State Hospital at Chattahoochee*, 89 F.3d 1562, 1572–73 (11th Cir.1996).

Because of these deficiencies, Plaintiff cannot establish the existence of a causal nexus between a specific, facially neutral employment practice and a statistically significant disparity. *See, e.g., Joe's Stone Crab*, 220 F.3d at 1279. In *Joe's Stone Crab*, the Eleventh Circuit found that the EEOC failed to establish a disparate impact claim where the EEOC presented no evidence that the employer's use of subjective criteria caused minority applicants not to apply or that minority applicants for positions at issue were disadvantaged by the subjective criteria. Similarly, in this case Plaintiff fails to point to any evidence linking Defendants' use of subjective criteria to the alleged statistical disparity. Therefore, Defendants' motion for summary judgment with respect to Plaintiff's disparate impact claim is granted. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1118 (11th Cir.1993) (holding that employer is entitled to summary judgment where plaintiff fails to provide evidence necessary to prove at trial that there is disproportionate impact of employer's policy on black employees).

For the reasons stated above, Defendants' motion for summary judgment [# 196] is GRANTED.